Clyde WARE

v.

BAKER DRIVEWAY, INC.

Superior Court of Delaware,
New Castle.

Aug. 11, 1972.

B. Wilson Redfearn and Stephen P. Casarino, of Tybout, Redfearn & Schnee, Wilmington, for employee.

Robert B. Walls, Jr., Wilmington, for employer.

## OPINION

McNEILLY, J.

This matter comes before the Court from a decision of the Industrial Accident Board dated September 28, 1971 in which certain awards were made to claimant and other claims were denied as will be hereinafter set forth.

The claimant, Clyde Ware of New Castle, Delaware, sustained a personal injury on June 30, 1960 arising out of and in the course of his employment with Baker Driveway, Inc.

An agreement as to compensation was entered into between the carrier of Baker Driveway, Inc. and the claimant, Clyde Ware, which provided that the said Clyde Ware should receive compensation, in accordance with 19 Del.C. § 2324, at the rate of Fifty dollars ($50.00) per week based upon an average weekly wage of Two hundred twenty-five dollars ($225.00), and that such compensation should be payable from and including the first of July, 1960 until terminated or otherwise modified, in accordance with the provisions of the Workmen's Compensation Law of the State of Delaware. A memorandum of this agreement was filed with and approved by the Industrial Accident Board on September 14, 1960, and under the terms thereof the carrier is paying compensation to the said Clyde Ware for total disability.

These appeals involve four (4) separate hearings before the Industrial Accident Board pertaining to additional compensation for permanent partial disabilities under 19 Del.C. § 2326 and commutation of compensation awarded under both § 2324 and § 2326.

In support of his petition for commutation the claimant introduced evidence to the effect that he wished to invest the money in a Mobile Home Sales and Service enterprise. The original two hearings had to do with claimant's petition for commutation, and at the conclusion of this first set of hearings the Board stated that it would not commute the payments of total disability under § 2324, but further stated that it would allow commutation of compensation payable under § 2326 and that "the claimant may choose to use this money in this potential business enterprise". The Board further stated that if he was successful in this endeavor, he could return sometime in the future to petition for commutation compensation payment under § 2324.

The Board stated that it had insufficient evidence to determine the amount of compensation due under § 2326 and requested that the Attorneys attempt to determine the amount of percentages of disability under this section. The Attorneys were unable to agree, and the second set of two hearings was held to determine the percentages of disability.

The claimant had requested percentage awards for permanent partial disabilities under 19 Del.C. § 2326. The request was for an award for disabilities to his back, right leg, kidneys, urinary tract, bladder, and for loss of sex function and disfigurement. As to the back the evidence presented was in the form of medical reports and testimony from Doctors King

and Bailey, Orthopedic Surgeons, and Dr. LeRoy, a Neurosurgeon. This evidence substantiated permanent partial disability to the back and varied from forty to sixty to eighty percent disability. As to the right leg the opinion of Doctors Bailey and LeRoy as to permanent partial disability varied from forty to fifty percent disability. As to the bladder the testimony of Dr. Furlong showed the disability to be between thirty to forty percent, and as to the kidneys the testimony of Doctors Furlong and Heather indicated the disability to be between twenty to forty percent. Since the Doctors depended upon the claimant's own testimony as to the total loss of sexual function they placed the loss of his sexual function at one hundred percent. The only area of controversy related to causation, as distinguished from the extent of disability and was regarding the loss of claimant's sex function. Based upon the foregoing the Board reached the following decision:

"Claimant is awarded 70 percent permanent partial disability to his back under § 2326(g), 40 percent permanent partial disability to his right leg under § 2326(a). We make no award for permanent partial disability to the bladder and kidneys since we are of the opinion that permanent partial disability to an internal vital organ is not compensable under § 2326. See in this regard Ruddy v. I. D. Griffith & Co., C.A. No. 75, Sussex Cty, 1966, Opinion of Judge Christie, affirmed by Superior Ct. [Supreme Ct.] 237A 2d 700 (1968). For purposes of appeal, however, we find the permanent partial disability to the bladder to be 35% and to the kidney to be 30%. However, as stated above, no award is made for either of these two disabilities.

Claimant is awarded 5% permanent partial disability for loss of sex function under § 2326g [2326(g)]. We believe loss of sex function is compensable under Workmen's Compensation Law of this State, (See David Kennedy v. Guy Johnston Construction Co., C.A. 5218,

New Castle Cty, 1970) if caused by physical or organic reasons. We believe it is not compensable if due to functional or psychological reasons. See Burton Transportation v. Willoughby, 265A 2d 22, 1970). We find in this case claimant has lost his sex function, but we believe the main reason for this loss is due to non-organic factors not related to the industrial accident. We find that 5% of the loss was caused by the industrial accident. In addition, claimant is awarded disfigurement for his operation scars. In accordance with our prior opinion in this case, the above amounts for permanent partial disability are to be commuted. The commutation date will be March 31, 1971 and not the date of this Award. Claimant is to receive a lump sum payment for the above disabilities without the statutory discount from that date to the date of this award. Thereafter, the remaining amount will be commuted at the statutory discount rate."

The employer appealed from this decision claiming that the Board should not have commuted payments to the claimant; that the award of seventy percent disability to the back was too high under the evidence and that the claimant should not have been awarded five percent disability for loss of sex function, in accordance with the evidence. The claimant appealed this decision contending that he is entitled to compensation for thirty-five percent permanent partial disability to his bladder and thirty percent permanent partial disability to his kidneys. He also appeals the Board's finding of five percent disability for loss of sex function claiming that under the evidence submitted to the Board he is entitled to a 100 percent loss of use as a result of the industrial accident.

The Courts of this State have consistently held that the function of the Superior Court on appeal is not to re-try an Industrial Accident Board case, but only to determine if there was substantial evidence supporting the findings of the Board.

In Johnson v. Chrysler Corporation, 213 A.2d 64 (Del.Supr.1965) the Supreme Court said:

"On appeal from the Board, however, the Superior Court does not sit as a tryer of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions. Although our Courts have expressed it in various ways, we think, the sole function of the Superior Court, as the function of this Court on appeal, is to determine whether or not there was substantial competent evidence to support the finding of the Board, and, if it finds such in the record, to affirm the findings of the Board (citing numerous cases). Only when there is no satisfactory proof in support of a factual finding of the Board may the Superior Court, or this Court for that matter, overturn it. Children's Bureau of Delaware v. Nissen, 3 Terry 209, 29 A.2d 603".

After carefully and fully reviewing the entire transcript of the proceedings below it is clear that there was more than substantial evidence to support the Board's findings of fact except as those findings pertained to the percentage of loss of sexual function which they found to be five percent.

■ Although a decision supported by substantial evidence cannot be disturbed, this Court should reverse a finding of the Board where there was no competent evidence to support it. Shannon v. General Motors Corp., 2 Storey 524, 161 A.2d 433 (1960). So far as the loss of sex function is concerned the Board erred in determining that claimant was entitled to only a five percent disability. The only evidence upon which the Board could have based its decision was that of Dr. Richard A. Kester, a Psychiatrist. The testimony of Dr. Kester was based upon speculation and possibilities. He was unable to state in terms of probabilities the cause of claimant's loss of sexual function, but could state only that it could possibly be caused by psychological overlay and just as possibly could be caused by the physical damage to his kidneys and bladder. He further stated that it would be impossible for him to state as a Psychiatrist without examining the claimant for his bladder or kidney problems, which he had not done, that the cause of the sex loss was not related to the physical problems which, therefore, would relate his sexual problems to the accident of 1960. He also testified that from interviewing the claimant it was his opinion not medically, but from a psychiatric viewpoint, that claimant's sexual impotency was due to non-organic factors associated with his personality and not due to the industrial accident.

Dr. Furlong, a specialist in urology and genitourinary surgery, when asked if he had any knowledge of the claimant's loss of sex function answered that this is something an urologist is never likely to have any objective knowledge about. Then when asked if this type of bladder and kidney problem results in a loss of sex function, he replied, "All I can say is that it may . . . . . it's pretty hard to pin down any more precisely." In addition, he explained to the Board that the type of bladder and kidney problem the claimant has may result in a complete loss of sex function, and, of course, the claimant himself testified that he has no use of his sex organ.

Dr. Heather who saw the claimant on numerous occasions since the accident testified that he had a one hundred percent sexual loss causally related to his industrial accident. His testimony on direct examination on that point was as follows:

"Q. And Doctor, in terms of medical probabilities, does Mr. Ware have, what I will call in laymen's terms, a sexual loss which is causally related to his industrial accident?

A. Yes sir.

Q. And can you tell me what his sexual loss is in percentage terms?

A. It's a one hundred percent, and it's tied into the same pathology that involves his bladder and kidneys."

He further stated on cross-examination.

"A. . . . . and following this (sic) spinal fusion he developed a chronic urinary tract infection. So this is when it had its onset.

Q. And that would apply to his bladder and kidneys?

A. Yes sir.

Q. And his sexual loss?

A. Yes sir."

He stated further that the loss was tied into the pathology that involves the claimant's bladder and kidneys.

It is clear then that the only medical testimony upon which the Board could base a finding of fact within the limits of medical probabilities to the exclusion of possibilities and speculation, was that of Dr. Heather who testified without reservation that claimant was one hundred percent sexually disabled and that such disability was physically related to the industrial accident.

■ This Court, therefore, reverses the finding of fact as it pertains to claimant's sexual disability and hereby finds as a fact that claimant was one hundred percent sexually disabled, leaving, however, the amount and duration thereof to the further discretion of the Board.

The record is clear that the industrial accident here involved caused physical injuries which further caused emotional disturbances and psychological overlays as indicated by all the Doctors, and that the ultimate result was a compensable loss of sexual function.

In the case of Rice's Bakery v. Adkins, 269 A.2d 215 (Del.Supr., 1970), the Court noted:

"The law seems settled that, provided a sufficient causal connection is proved by competent evidence between an industrial accident and a resulting psychological or neurotic disorder resulting therefrom, such disability is compensable under Workmen's Compensation law. See Fiorucci v. C. F. Braun & Co., 4 Storey 79, 173 A.2d 635 (Del.1961). We so hold."

■ The next question concerns the commutation of compensation on the awards made by the Board under § 2326.

The governing statute, 19 Del.C. § 2358 provides:

". . . commutation may be allowed if it appears that it will be for the best interest of the employee . . ."

This Court, in Molitor v. Wilder, 195 A. 2d 549 (Del.Super., 1963), said:

"The primary rule of the Compensation Act is that periodical payments shall be made; § 2360. This rule is for the protection of the employee. The purpose is to give the employee an income payable as his wages were paid and to preclude any possibility of an improvident employee or dependent wasting the means provided for his support and thereby becoming a charge on society. (Citing cases) Commutation is not favored; it should only be granted after a showing of unusual circumstances (§ 2358), and where the reasons are sound and convincing."

The claimant was a truck driver for Baker Driveway, Inc., at the time of his injury, and during sometime in his adult

life he had worked with his father in the Mobile Home Business. Since his injury he has not worked at any regular job, but during the year 1969 he did work for short periods doing a small amount of maintenance work on mobile homes and trying to generate some sales of mobile homes. During the entire year he estimated that he worked only thirty (30) hours as a maintenance man and spent about twenty (20) hours supervising other employees in maintenance work. He further stated that he promoted about three sales during the year, and that he has done no work in this field since 1970. Prior to this and during the year 1968 he acted as an adviser to a man who wanted to set up a Mobile Home Sales and Service business. After approximately three months the business failed. There is no doubt that the claimant's physical condition is extremely bad as are his psychoneurotic difficulties. As a result of his unsatisfactory efforts in the mobile home business during the years 1968 and 1969 as well as his present physical and mental condition the employer claims that he neither has the physical nor the mental ability to carry on a competitive business and, therefore, the Board should not commute any part of any award by reason of the rules laid down by this Court in Molitor v. Wilder (Supra).

The claimant testified that he would need approximately Fifteen to Twenty thousand dollars to set up a Mobile Home Service operation, and other lay witnesses testified that they would make every effort to assist him in setting up such an operation.

The Board indicated that it was not impressed with the testimony of these lay witnesses, and obviously because of the Board's lack of confidence in the proposed enterprise, commutation was denied with respect to the award of disability under § 2324. On the other hand, there was substantial medical testimony throughout the record upon which the Board in its discretion could find the unusual circumstances

required by Molitor v. Wilder (Supra) to permit a lump sum payment of the awards made under § 2326. If this claimant is ever to be rehabilitated mentally and even physically to any extent it is obvious that he must be given an opportunity to prove himself to himself and to the community that he can carry on some fruitful and productive work of some kind. Based on the medical testimony in the record the Board clearly has sufficient evidence before it to exercise its discretion in giving this man that opportunity, and, therefore, the commutation award should not be disturbed.

■ The employer makes some argument that commutation of compensation should not be made because it is impossible to ascertain the claimant's life expectancy. It is correct that there was some testimony in the record stating that the claimant's life expectancy might be less than that of a normal person, but no estimate of how much less was made and, therefore, this Court can only accept his life expectancy as being that of a man of his age who will live out a normal life expectancy.

The Board made a specific finding that the claimant sustained a thirty-five percent disability of the bladder and a thirty percent disability of the kidneys, but refused to award money damages in accordance with Section 2326(g) and stated as follows:

"We made no award for permanent partial disability to the bladder and kidneys since we are of the opinion that permanent partial disability to an internal vital organ is not compensable under Section 2326. See in this respect Ruddy v. I. D. Griffith & Co., C.A. No. 75, Sussex Cty., 1966, opinion of Judge Christie, affirmed by the Supreme Court 237 A.2d 700 (1968). For purposes of appeal, however, we find the permanent partial disability to the bladder to be thirty-five percent and to the kidneys to be thirty percent. However, as stated above, no

award is made for either of these two disabilities."

In the case of Ruddy v. Griffith the claimant suffered a heart attack while working for his employer, and the issue before the Court was whether the claimant was entitled to loss of earning capacity and whether he was entitled to disability for the loss of the use of the heart under Section 2326. This case does not stand for the proposition that there can be no disability to an internal organ compensable under the Act. A review of Section 2326 reveals that from Sub-sections (a) through Sub-sections (c) every injury resulting in any loss of use is compensable. Sub-section (f) in addition to permitting awards for disfigurement, permits recovery for the loss of the organs involved herein. Sub-section (g) follows, making it clear that its purpose was to compensate for the loss or any other organ or member of the body for which no compensation had been granted under the preceding subsection, and it makes no distinction between external or internal organs. For the board to distinguish between an external and internal organ is without any real basis. Sub-section (f), for example, gives recovery for the loss of hearing and the loss of hearing results from the disability of any internal organ.

In Burton Transportation Center v. Willoughby, 265 A.2d 22 (Del.Supr.) 1970 the issue was whether an employee could recover disability of his whole body caused by a traumatic neurosis under § 2326(g), and the Court held that he could not, but in its opinion stated that compensation under Sub-section (g) is for loss of some "specific identifiable member or organ of the body, and not [for] a general condition."

In Alloy Surfaces Company v. Cicamore, 221 A.2d 480 (Del.Supr.) 1966 the Supreme Court held that teeth which are internal members of the body, are parts of the body compensable under Section 2326

and in Guy Johnston Construction Co. v. Kennedy, 287 A.2d 658 (Del.Supr.) 1972 the Supreme Court held that the loss of the use of the sex organ was compensable under § 2326(g) and recognized that loss of *any* "organ" of the body is compensable; stating:

"In our opinion, the present case is clearly governed by the *Cicamore* decision. The sex organ is a specific identifiable member or organ of the body and loss of its use is compensable under subsection (g)."

■ The kidneys and bladder are "identifiable members or organs of the body" and their loss is compensable. In not granting compensation the Board erred as a matter of law and should make an award in an amount and for such a duration as the discretion of the Board determines.

■ The employer contends that the Board erred in awarding compensation for serious and permanent disfigurement as a result of operation scars on claimant's back, one of which extended approximately five inches above his waistline and was visible only when he was wearing trunks or was otherwise unclothed above the waistline. 19 Del.C. § 2326(f) provides in its pertinent part as follows:

"The Board shall award proper and equitable compensation for serious and permanent disfigurement to any part of the human body . . . provided, that such disfigurement is visible and offensive when the body is clothed normally."

In the Board's findings of fact there was no finding pertaining to the alleged serious and permanent disfigurement although there was an award made "for serious and permanent disfigurement as a result of operation scars".

In previous unreported cases the Board apparently has gone so far as to declare bathing suits as normal clothing within the meaning of the statutory requirement that

the disfigurement be visible when the body is clothed normally.

 The claimant displayed his scars to the Board, and on appeal this Court may not reverse a finding of fact made by the Board when such fact is supported by evidence. Shannon v. General Motors Corp., 2 Storey 524, 161 A.2d 433 (1960).

The evidence clearly supports a finding that the scars were serious and permanent, and that they in fact disfigured the claimant's back. As to their offensiveness and visibility, when the body is clothed normally, the only evidence in the record is, as previously stated, that approximately five inches of one scar would be visible if claimant was wearing a bathing suit, and that the scars were offensive to the claimant.

Offensiveness to the claimant alone does not meet the statutory test, but the real question is whether trunks or being unclothed above the waist comes within the requirement that such disfigurement be visible and offensive when the body is clothed normally. In my opinion, the phrase "clothed normally" should not be stretched to include bathing trunks.

It is my opinion that normal clothing should be considered as clothing worn by a man in his daily routine of life. Each case should be decided on its own merit. For example, what applies to a man who is a swimming instructor and who is normally attired during the course of his daily living should not apply to the man whose daily way of life includes as his normal clothing at least a shirt and trousers as in this case.

The award for disfigurement is not supported by the evidence and is hereby reversed.

The decision of the Board is affirmed in part, reversed in part and remanded back for further proceedings consistent with this opinion.