# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RANDSTAD STAFFING, | ) | |
| | ) | |
| Employer-Below, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N22A-06-001 CLS |
| | ) | |
| LAMESE STANSBURY, | ) | |
| | ) | |
| Claimant-Below, | ) | |
| Appellee. | ) | |
| | ) | |

Date Submitted: April 19, 2023
Date Decided: July 14, 2023

*Upon Appellant's Appeal from the Order of the Industrial Accident Board.*
**AFFIRMED.**

## ORDER

Walter J. O'Brien, Esquire, Weber Gallagher Simpson Stapleton Fires & Newby, LLP, New Castle, Delaware, 19720, Attorney for Employer Below-Appellant Randstad Staffing.

Elissa Greenberg, Esquire, Long & Greenberg, LLC, Odessa, Delaware, 19730, Attorney for Claimant Below-Appellee, Lamese Stansbury.

**SCOTT, J.**

1

## INTRODUCTION

Before this Court is Employer-Appellant Randstad Staffing's ("Employer") appeal from the decision of the Industrial Accident Board ("Board") denying Employer's Motion to Enforce Written Agreement with Employee-Appellee Lamese Stansbury ("Claimant"). The Court has reviewed the parties' submissions. For the following reasons, the Board's decision is **AFFIRMED.**

## BACKGROUND

Claimant was injured in a work-related accident on February 25, 2020. Employer agreed that the accident caused a left shoulder injury, but disputed injuries to the cervical and lumbar spines. On or about March 27, 2020, Claimant attempted to seek treatment for her cervical spine with Dr. Adam Ginsberg, but his office rescheduled her appointment several times due to COVID-19. On May 5, 2020, Claimant learned that Employer was denying her cervical spine treatment. She did not know how to treat without insurance. On August 5, 2020, Claimant started working for a new employer to get health insurance. On September 2, 2020, she was able to see Dr. Ginsberg.

On November 4, 2020, Claimant filed a Petition seeking to have Employer recognize her cervical spine injury and pay for related medical treatment. Presumably, at some point thereafter, Mr. Freibott arranged for Claimant to undergo a permanent impairment evaluation with Dr. Jeffrey Meyers. On May 11, 2021,

2

Claimant filed a Petition seeking permanent impairment to her cervical spine, left shoulder, and lumbar spine as rated by Dr. Meyers. The two Petitions were consolidated and scheduled for a Hearing on October 25, 2021. Meanwhile, in July of 2021, Employer and Claimant re-visited the issue of a global commutation (or a "global settlement") of the workers' compensation case.

On October 12, 2021, Claimant authorized Mr. Freibott to demand $50,000.00 to globally settle her case, with a goal of settling for $25,000.00. On October 18, 2021, Mr. Freibott had a long conversation with Claimant about the weaknesses of her legal case. During that conversation, Mr. Freibott advised against proceeding with the deposition of Employer's medical expert witness, Dr. Andrew Gelman, which was scheduled for the next day. According to Mr. Freibott, Claimant agreed to settle her case for $22,000.00 (which included a $2,000.00 medical expert witness fee reimbursement). On October 19, 2021, about a half an hour before Dr. Gelman's scheduled deposition, Claimant told Mr. Freibott that she did not agree with his settlement recommendation and wished to proceed with litigation. Mr. Freibott told Claimant that he would withdraw as her counsel if she did not follow through with the global settlement. According to Mr. Freibott, Claimant did not want him to withdraw, and agreed to proceed with the global settlement. This fact is in dispute as Claimant claims she did not agree to proceed with the global agreement.

On October 21, 2021, Mr. Freibott accepted Employer's offer of $20,000.00 after confirming that Dr. Meyers would waive his $2,000.00 medical expert witness fee, so that Claimant's net settlement recovery would be the same. On October 24, 2021, Claimant consulted Dr. Pawan Rastogi for continuing neck problems. According to Claimant, Dr. Rastogi said that Claimant's neck complaints were related to the work accident and that she needed surgery. On November 2, 2021, Claimant contacted her attorney and renewed her prior concerns about the global settlement. This time, there was no longer any pending litigation. Mr. Freibott withdrew as counsel. On December 2, 2021, Claimant underwent neck surgery by Dr. Rastogi.

The instant dispute involves Employer's November 18, 2021 Motion seeking to Enforce the Written Settlement Agreement. On January 20, 2022, the Board heard the parties' dispute. During the Hearing, Mr. Freibott admitted that Claimant was reluctant to settle her case but gave him authority to do so after he proposed withdrawing as counsel. Claimant testified that the global settlement was not in her best interest. Specifically, Claimant testified that she was not satisfied with the commutation because she had neck surgery, and her neck complaints were not included in her settlement. Claimant also denied giving Mr. Freibott the authority to settle her case. On February 25, 2022, the Board denied Employer's Motion on grounds that, while there was arguably a "meeting of the minds" between Claimant

4

and Employer, the global settlement did not appear to be in Claimant's best interest as required by Section 2358(a).

## STANDARD OF REVIEW

On appeal from the Industrial Accident Board, the Superior Court must determine if the Board's factual findings are supported by substantial evidence in the record and free from legal error.[1]  In reviewing the actions of the agency, the Court is required "to search the entire record to determine whether, on the basis of all the testimony and exhibits before the agency, it could fairly and reasonably reach the conclusion that it did."[2]  The Court does not "weigh evidence, determine questions of credibility or make its own factual evidence findings."[3]  When a discretionary ruling of the Board is appealed, the Court's scope of review is "limited to whether the Board abused its discretion."[4]

## DISCUSSION

The Workers' Compensation Act has clear provisions as set out in 19 Del. C. § 2358(a) that allow parties to settle their cases through global resolutions via the commutation process. To do so requires Board approval, which is granted if the

---

[1] *Bedwell v. Brandywine Carpet Cleaners*, 684 A.2d 302, 304 (Del. Super. 1996) (*citing General Motors Corp. v. Freeman*, 164 A.2d 686, 688 (Del. 1960)).
[2] *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674–75 (Del.Super.1980).
[3] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 67 (Del.1965).
[4] *Funk v. Unemployment Ins. Appeal Bd.*, Del.Supr., 591 A.2d 222, 225 (1991).

Board determines that a lump-sum settlement is in the Claimant's best interest. In this case, Employer attempts to create a legal question warranting de novo review by arguing that the statutory "best interest" concept is vague. This argument fails to consider that the Delaware Supreme Court has clarified: "In order to realize the fullest possible potential of the humane and beneficial purposes of workers' compensation statutes, courts have accorded them a generally liberal interpretation ... The liberal interpretation is used to resolve any reasonable doubts in favor of the worker because it was for the workers' benefit that the act was passed."[5] Employer also argues because the Board has the discretion to "veto" agreements that parties have negotiated, it violates freedom of contract. The Court may not rewrite the provisions of the Workers' Compensation Act to exclude the Board's discretion over agreements that fall well within the whelm of their intended powers.

Section 2358(a) does not instruct the Board to concretely determine whether or not a settlement is, or is not, in an employee's best interest. Rather, the statute instructs the Board to focus on the settlement's appearance. The relevant verbiage is: "[a] commutation may be allowed if it appears that it will be for the best interest of the employee." The Board is entitled to accept the testimony of a claimant. In

---

[5] *Hirneisen v. Champlain Cable Corp.*, 892 A.2d 1056, 1059 (Del.2006).

*Ware v. Baker Driveway, Inc.*,[6] a Board decision granting commutation benefits to a claimant who needed the funds to start a new business was upheld. There, the establishment of a business was intended to help rehabilitate the claimant, as his physical and mental condition were eroding.[7] Similarly, in *Jackson v. Ametek, Inc./Haveg Div.*,[8] there was an approved settlement where the Board accepted the testimony of the claimant that the commutation agreement would be in her best interest in light of her health problems and her desire to use the funds to find a place of her own and move on with her life. The *Jackson* Court found that claimant knowingly and voluntarily entered into the agreement and while claimant disapproved of the deal obtained by counsel, she offered nothing to support the claim that she was inappropriately represented in the settlement agreement.[9]

The facts in *Jackson* vary from the facts before this Court. Here, the Board accepted Claimant's belief that there is a connection between her work accident and neck condition as she provided explanations for the delays in treatment and represented Dr. Rastogi believes there is a causal connection. As such, the global

---

[6] *Ware v. Baker Driveway, Inc.*, 295 A.2d 734 (Del.Super.1972). It should be noted that a portion of the holding in Ware was subsequently overruled in *Beam v. Chrysler Corp.*, 332 A.2d 143 (Del.1975). However, the commutation of benefits issue was not affected.
[7] *Id.*
[8] *Jackson v. Ametek, Inc./Haveg Div.*, 2003 WL 22285607 (Del. Super. Ct. Sept. 30, 2003), aff'd, 843 A.2d 695 (Del. 2004)
[9] *Id.* at *4.

settlement, which was based solely Claimant's recognized injury to her left shoulder, was not in the best interest of the Claimant as there is no compensation for the neck injury. There are no facts to indicate Claimant admitted the global agreement was in her best interest, in fact, testimony of Claimant indicates she represented it was not in her best interest. Additionally, unlike *Jackson*, Claimant did present evidence she may have been inadequately represented as her attorney told her he would withdraw as her counsel if she did not follow through with the global settlement. Based on the finding that are supported by substantial evidence, there is no abuse of discretion in the Board finding the global agreement was not in the best interest of the Claimant.

## CONCLUSION

For the foregoing reasons, the Board's decision is **AFFIRMED.**

**/s/ Calvin L. Scott**
**Judge Calvin L. Scott, Jr.**