HARDEN, Respondent
v.
SOUTH DAKOTA CREDIT UNION LEAGUE, INC., Appellant

(209 N.W.2d 665)

(File No. 11126. Opinion filed July 31, 1973)

**Willy, Pruitt, Matthews & Jorgensen, Acie W. Matthews,** Sioux Falls, for employer and appellant and insurer and appellant.

**Christopherson & Bailin, Marvin K. Bailin,** Sioux Falls, for employee-claimant and respondent.

HANSON, Justice.

In this Workmen's Compensation proceeding the employer, South Dakota Credit Union League, and its insurer, Iowa Mutual Insurance Company, appeal from a judgment of the Circuit Court of Minnehaha County affirming an award for compensation benefits granted by the Commissioner of Labor and Management Relations to the employee, Lloyd Harden.

The compensation award in this case was based upon findings of fact made and entered by the Commissioner of Labor and Management Relations. However, the record shows the evidentiary hearing was held on March 16, 1971 before Deputy Industrial Commissioner, Thomas Vickerman. He adjourned the hearing and withheld decision pending the taking of two medical depositions. During this interim period the duties of the Industrial

Commissioner were transferred to the newly created office of Commissioner of Labor and Management Relations. Thereafter, Henry Carter, as the new Commissioner of Labor reviewed the record and entered findings of fact on December 15, 1971.

■ Ordinarily, the Commissioner is the trier of facts in compensation cases and his findings of fact must be accepted by a reviewing court unless clearly erroneous—as they stand substantially upon the same plane as a jury verdict. Joffer v. Crusy's Power Brake & Supply, Inc., 83 S.D. 191, 156 N.W.2d 189. But this rule of review is not applicable in the present case as the Commissioner of Labor did not conduct the evidentiary hearing and did not have the benefit of seeing and hearing the witnesses testify.

The record shows Harden was a 50-year-old individual with a history of back problems. He commenced working for the South Dakota Credit Union League on February 17, 1967 as Director of Education and Publicity. His first back trouble occurred in January 1968, when he twisted his back lifting shelves. Harden received chiropractic treatments for this injury, the expense of which was paid by the employer. However, no formal written notice of claim was ever given nor was anything further heard about this incident by the employer.

Harden's employment required him to travel throughout the state, for which purpose his employer furnished him a leased 1967 Chevrolet Impala. He drove the Impala until September 1, 1968, and was then furnished a leased 1968 Dodge Coronet. After driving the newer car for a time, Harden complained about pain and muscle spasms in his right leg and in his back. In his opinion the smaller Dodge Coronet was harder riding than the larger Chevrolet Impala. He testified he reported this to his immediate superior around October 1, 1968, and asked for a change of cars, but never received one.

Harden received further chiropractic treatments on his back in September, October and November 1968. On November 21, 1968, X-rays were taken which indicated he was having disc problems. His doctor testified in part as follows: "* * * I don't

think that there was too much degeneration of the disc, but I definitely think he was having a starting of a herniation of the disc either in the L-5 or S-1 area causing the sciatica into the leg."

During the 1968 holiday season Harden used the Dodge Coronet on a 3000 mile vacation trip. He claimed he did not drive more than 100 miles and his son and daughter drove the balance of the way. After Harden was hospitalized other employees drove the Dodge Coronet the balance of the lease period. They experienced no problems and considered it provided a comfortable ride.

Harden was hospitalized from January 20 until February 17, 1969, in the Sioux Falls Veterans Administration Hospital where his condition was diagnosed as "probably suffering from some form of disc injury". He thereafter returned to the South Dakota Credit Union League where he performed office work. He was subsequently hospitalized from April 21 to May 26, 1969. He was then examined by an orthopedic surgeon who diagnosed his problem as a disc injury and recommended surgery. Surgery was performed on July 29, 1969, for a disc injury. Harden contends the hard-riding Dodge Coronet contributed to the herniation of a degenerated disc in his back early in November 1968, which constituted a compensable injury by accident arising out of and in the course of his employment.

■ Recovery may not be denied merely because Harden had a prior history of back problems. In Elmstrand v. G & G Rug & Furniture Company, 77 S.D. 152, 87 N.W.2d 606, the court explained that insofar as a preexisting condition is concerned "we must take the employee as we find him. If a compensable event contributed to the final disability, recovery may not be denied because of the preexisting condition, even though such condition was the immediate cause of the disability."

■ In the present action the medical testimony merely indicates that riding in or driving the smaller car "could have" created or aggravated Harden's back condition. The attending chiropractor testified as follows:

"Q * * * do you have an opinion based upon medical certainty and your professional qualifications as to whether or not the use of the small car by Mr. Harden aggravated the back condition to the point that it created the disc problem?

\* \* \* \* \* \*

A I think that the condition that he had at the time when I saw him in November when I took the X-ray and when he was starting to get some disc symptoms could have been aggravated and could have been a reason for him to start having some problems with his back".

The orthopedic surgeon, in response to a question by Harden's counsel, stated:

"Q. All right. Doctor, do you have an opinion, based upon reasonable medical certainty, as to whether a ‹ herniated disc could have been due to an aggravation of a preexisting condition and could have been caused by the driving of a small car such as a 1968 Dodge Coronet?

A. Would you read that last part again?

(Question read back by Reporter.)

A. Could have been, yes, I have an opinion.

Q. And what is that opinion?

A. It could have been.

Q. It could have been caused—

A. Caused by this activity."

In Howe v. Farmers Cooperative Creamery of Madison, 81 S.D. 207, 132 N.W.2d 844, it was pointed out that a compensa-

tion award cannot be based on mere possibility or speculation and an injury cannot be inferred merely because an accident occurred. "Where there is no obvious causal relationship, the testimony of a medical expert may be necessary to establish the causal connection." The medical testimony did not go further than to indicate that claimant's condition "could have" resulted from the fall. Although the court conceded there was unequivocal evidence of an accident it nevertheless concluded the record did not compel a finding of causal connection. The court's conclusion was obviously based on the weakness of the "could have" medical testimony together with the lack of other credible evidence of a nonmedical nature showing causal relationship. The same deficiency in proof of causal connection of a nonmedical nature exists here.

Appellants further contend proper notice of injury was not given as required by SDCL 62-7-10 and the compensation claim is barred by the statute of limitations under SDCL 62-7-35 and 62-4-5. Although both contentions appear to have merit there is no need to consider them at length in view of Harden's failure to prove that his preexisting back condition was aggravated by an accident arising out of and in the course of his employment.

Reversed.

WINANS and WOLLMAN, JJ., concur.

BIEGELMEIER, C. J., dissents.

DOYLE, J., concurs in dissent.

BIEGELMEIER, Chief Justice (dissenting).

The opinion reverses an award of compensation benefits by a Commissioner of Labor affirmed by the circuit court. The award was based on a finding of fact that employee's injury was caused by the compact car furnished by the employer which aggravated a previous injury to his back.

The opinion cites, quotes and relies on Howe v. Farmers Co-op Creamery, 81 S.D. 207, 132 N.W.2d 844, for reversal.

Howe is not apposite, for there the finding of the Commissioner was *against* the employee and the employee's sole contention for reversal of the finding was that as the "claimant has proved a compensable injury by a clear preponderance of evidence it was unreasonable for the trier of fact to fail to find affirmatively for him." That evidence was medical testimony that the condition of claimant " 'could have' " resulted from the fall. The court held this evidence "did not *compel* a finding of causal connection" so as to require a reviewing court to *set aside* the finding of the Commissioner, the trier of fact, but it expressly avoided holding the evidence was insufficient to sustain a finding and award for claimant by saying:

> "We need *not* determine whether the record would have *precluded* a finding that the condition of claimant resulted from or was aggravated by the alleged accident." (emphasis supplied)

The testimony of the employee was that he experienced no difficulty or pain when he drove the Chevrolet Impala because of its large size, etc., but the seat of the compact car was such that "you sat real low on the floor * * * the back of the seat tilted * * * in such a way that instead of sitting square * * * you sat in a curve", and with the small wheels "anytime you hit a hard bump, why, you hit the bottom of the floor." After driving it muscle spasms and pain in the back resulted. This was evidence upon which a trier of fact could base a finding of causation; the medical testimony was only cumulative and supportive of the finding.

The opinion states that ordinarily a finding of the commissioner must be accepted by a reviewing court as a jury verdict. We also said in the cited Howe opinion that findings of fact must be accepted "unless so palpably erroneous upon the record as to be unreasonable", and followed this in Joffer v. Crusy's Power Brake & Supply, 1968, 83 S.D. 191, 156 N.W.2d 189. To me the finding is not subject to reversal on either test.