**AMOCO CHEMICAL CORPORATION, Employer, Aetna Casualty and Surety Company, Insurer, Appellants,**

**v.**

**James R. HILL, Claimant, Appellee.**

Superior Court of Delaware, New Castle.

March 22, 1974.

Max S. Bell, Jr., of Richards, Layton & Finger, Wilmington, for appellants.

Oliver V. Suddard, Wilmington, for appellee.

## OPINION

McNEILLY, Judge.

This is an appeal from a decision of the Industrial Accident Board which awarded Claimant the following benefits as additional compensation for a back injury sustained by him in the course of his employment on January 12, 1970.

(1) weekly benefits for disability from work from February 22, 1971 to July 31, 1971 (under § 2324);

(2) 60 weeks of benefits for 20% permanent back impairment (under § 2326);

(3) medical expenses, medical witness fees, and attorney's fee.

The Claimant in this case had been employed by the Appellant for approximately six or seven years in the Electrical Department of the Appellant Company. His work required him to lift rolls of material called "slither rolls" which varied in weight from six (6) pounds to three hundred forty-five (345) pounds. A heavy roll was normally handled by a mechanical hoist. On the other hand, when the weight of the roll reached a point where the individual thought he could handle it physically he would do so, and in some cases rolls heavier than should have been handled manually were so handled, sometimes because of the absence of an assistant, and, obviously, sometimes as the result of poor judgment.

The Claimant, a young man twenty-eight years of age, received a compensable back injury on January 12, 1970, as a result of a slip and fall on ice in the Company's parking lot on his way to work. Thereafter, he lost approximately two weeks' time from work and received total disability benefits from January 20, 1970 to February 2, 1970 under an agreement for compensation approved by the Board on February 18, 1970. Prior to this injury Claimant had suffered two back injuries, the first when he was about fifteen (15) or sixteen (16) years of age during a football game, and the second occurred during the month of February, 1967 while pushing a car. As a result of the first injury he stopped playing football, but he has no recollection of any aftermath from the injury occasioned by pushing the car. He did have some pain following these two injuries, but, according to his testimony, it would be there one day and he would not feel it again for eight months or a year. On the other hand, the Claim-

ant's lower back region continued to hurt him periodically following the January 12, 1970 slip and fall, but even so during the period between January 12, 1970 and February 18, 1971 he continued to bowl, play golf and basketball.

Following the January 20, 1970 incident the Claimant was referred to Dr. Haynes B. Cates, an orthopedic surgeon, who treated him conservatively and permitted him to return to work on February 3, 1970 with restrictions of no lifting or climbing.

On March 4, 1970 he was re-evaluated by Dr. H. Thomas McGuire, the Company physician, and was returned to full duty. Dr. McGuire's clinical records indicate that the Claimant went to the Plant Infirmary with back complaints on November 4, 1970, on November 6, 1970, November 9, 1970, November 13, 1970 and November 17, 1970, at which time he was again referred to Dr. Cates who recommended that he wear a support and that he use a hoist for lifting while at work. He also placed him on a program of conservative treatment. In Dr. Cates' testimony he indicated that he advised Claimant to get a back brace, restrict his activity and stay in touch with Dr. McGuire, and, in general, to continue on the same conservative program that he had been on prior to returning to work after the injury of January 12, 1970. When asked what care Claimant's back would require in order to continue for an indefinite period of time without requiring surgery Dr. Cates indicated that he should be restricted to using the lumbo-sacral support and to no prolonged standing, bending, stooping or heavy lifting. He further stated that with a back condition such as Claimant's he would advise very strongly against bowling and other activities that would require bending and stooping. When asked about basketball he stated that since it is a semi-contact sport it could be dangerous. In his actual report to the Claimant and the Company he did not mention sports specifically because he assumed that such a restriction against the playing of any sport should have been inferred from the first letter he wrote to the Company.

It also should be noted that according to the testimony of the Claimant himself on his last visit to Dr. Cates, he was advised to quit his job and find another one that was not so strenuous.

On February 18, 1971 the Claimant worked without event. That night he played basketball in the Company League. When he first began participating in the Company Basketball League following his fall of January 12, 1970 he played no more than one or two games and participated mostly as a Coach. On the night of February 18, 1971, however, he was participating in the sport as a player. During the last part of the game he had to sit on the bench because of back pains. He testified that he could not walk, he could not move, and he was in such pain that he had to be helped to his car. When he arrived home he was having such difficulty that he literally had to crawl from his car into his house. The next day he was unable to report for work, and ultimately he was admitted to the Hospital and his back was operated on by Dr. Olmedo, a neurosurgeon, who performed a laminectomy.

At the hearing before the Board testimony was given by Dr. McGuire, a general practitioner, Dr. Cates, an orthopedic surgeon, Dr. Bailey, an orthopedic surgeon, and Dr. Olmedo, a neurosurgeon. All of these Doctors agreed that the Claimant had a pre-existing degenerative disk prior to his slip and fall of January 12, 1970; that he continued to have problems with his back until the evening of the basketball game on February 18, 1971, and they also were unanimous in their opinions that Claimant should not have played basketball. Dr. Cates said "it is a semi-contact sport and could be dangerous". Dr. Bailey agreed, and Dr. Olmedo said:

"A. Again, as I said, anything that is full of contact is no good because you cannot avoid the sudden jerk, the sudden jolt will create a collision with your

body with your fellow player and if you do it will be at the expense of a sudden contraction or certain muscle of the back and this is no good. Not to be advised to play basketball, football especially".

Dr. Bailey testified that the basketball game was just another cog in the wheel of his problems, and that about all it did was to do him in. He further testified that from the history given to him Claimant could probably have worked, but that the basketball game was a precipitating factor that put him out of work.

There have been many decisions of the Superior and Supreme Court of Delaware that outline the authority and duties of the appellate court in reviewing a decision of the Industrial Accident Board. One of these decisions is Johnson v. Chrysler Corporation, 213 A.2d 64 (Supreme Court of Delaware 1965). The duties were expressed as follows:

"On appeal from the Board, however, the Superior Court does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions. Although our Courts have expressed it in various ways, we think the sole function of the Superior Court, as is the function of this Court on appeal, is to determine whether or not there was substantial competent evidence to support the finding of the Board, and, if it finds such in the record, to affirm the findings of the Board. General Motors Corporation v. McNemar, Del., 202 A.2d 803; Faline v. Guido & Francis DeAscanis & Sons, supra; General Motors Corporation v. Freeman, 3 Storey 74, 164 A.2d 686; Wright v. American Brake Shoe Co., 8 Terry 299, 90 A.2d 681, and Le Tourneau v. Consolidated Fisheries Co., 4 Terry 540, 51 A.2d 862. Only when there is no satisfactory proof in support of a factual finding of the Board may the Superior Court, or this Court for that matter, overturn it. Children's Bureau of Delaware v. Nissen, 3 Terry 209, 29 A.2d 603".

In Ware v. Baker Driveway, Inc., 295 A.2d 734 (Delaware Superior Court 1972) the Court so stated the rule as follows:

"Although a decision supported by substantial evidence cannot be disturbed, this Court should reverse a finding of the Board where there was no competent evidence to support it".

In McGlinchey v. Phoenix Steel Corp., 293 A.2d 585 (Superior Court of Delaware 1972) the Court so stated this rule as follows:

"In reviewing decisions of the Industrial Accident Board, the function of the Superior Court is to determine whether there is substantial evidence to support the Board's findings".

This rule was also restated recently in the Supreme Court of Delaware decision in Avon Products, Inc. v. Lamparski, Del., 293 A.2d 559 (1972) where the Supreme Court stated:

"The scope of review of factual findings of the Industrial Accident Board, both in the Superior Court and in this Court, is limited to a determination of whether or not there was substantial evidence sufficient to support those findings".

On the basis of the stated facts the Board characterizes the Claimant's participation in the Employer's Recreational Basketball League as imprudent, but further found that said participation could not be termed as negligent. These findings are inconsistent. An imprudent act is defined in Webster's Third New International Dictionary as an act which lacks discretion, caution, circumspection or due regard to consequences.

■ Negligence is generally defined under the law of this State as the want of ordinary care: That is, the failure to use such care as a reasonably prudent and careful person would use under similar circumstances. Negligence is the doing of some act which a person of ordinary pru-

dence would not have done under similar circumstances or failure to do what a person of ordinary prudence would have done under similar circumstances.

■ There is no dispute in any of the testimony before the Board concerning the clear warnings to Defendant to restrict his work activities and not to participate in any heavy lifting or strenuous work and the use of a back support. How it can be said that the Claimant acting as a reasonable man could restrict his activities on the advice of all Doctors in the daytime and not apply the same advice to the nighttime is beyond the comprehension of this Court. It is true that neither of the Doctors specifically advised him as to what these work restrictions meant when it came to his extra-curricular sports activities, but he either knew or certainly should have known that the restrictions were not a game to play at work and to forget in the evenings on his own time.

The Board completely failed to consider the reasonable man standard although it did, in fact, rule that the playing of basketball was "imprudent".

A general rule of causation in such cases as this is stated by Larsen's Workmen's Compensation Law, § 1300 as follows:

"When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct".

■ When the question arises as to whether compensability should be extended to an injury or aggravation following a primary compensable injury, the rules that come into play essentially are based upon the concept of "direct and natural results", and of Claimant's own conduct as an independent intervening cause. Thus if the chain of causation could have been said to have been broken by a subsequent injury attributable to the Claimant's own negligence or fault an intervening cause would exist and the employer would be relieved of liability. Worthy Bros. Pipe Line Corporation v. Vincent, Del.Super. (1972) 5275 Civil Action, 1971, and Hudson v. duPont, Del.Super., 245 A.2d 805, 1968.

"When, however, the injury following the initial compensable injury does not arise out of a quasi-course activity, as when a Claimant with an injured hand engages in a boxing match, the chain of causation may be deemed broken by either intentional or negligent Claimant's misconduct". Larsen's Workmen's Compensation Law, § 13.11.

Sullivan v. B & A Constr., Inc., 282 A.D. 788, 122 N.Y.S.2d 571, rev'g 307 N.Y. 161, 120 N.E.2d 694, 696 (1954). "Here, quite obviously, it was claimant's own temerity, not the physical handicap resulting from the industrial accidents, that was primarily responsible for the later, 1950, accident . . . . When claimant ignored his locking knee and, without justification, continued to drive, responsibility for the accident and its consequences could no longer be ascribed to his employment-created disability."

Johnnie's Produce Co. v. Benedict & Jordan, 120 So.2d 12 (Fla.1960). The employee sustained an ankle injury while working for the first employer. While working for the second employer, he jumped off a truck and, due to the weak ankle, fell, injuring his back. The court upheld the commission's finding that the injury did not come within the rule holding the original employer liable for every natural sequence that flows from the injury. The commission stated that "if a claimant, knowing of certain weaknesses, rashly undertakes activities likely to produce harmful results, the chain of causation is broken by the claimant's own negligence."

Jones v. Huey, 210 Tenn. 162, 357 S.W.2d 47 (1962). The employee was injured while working for a lumber com-

pany. Subsequently he was killed while operating a farm tractor. The widow alleged that the fatal accident was caused by his prior disability and sought compensation from the lumber company. The court held that the intervening negligence of the employee, in attempting to operate the tractor in his condition, or alternatively, the negligent operation of the tractor, broke the chain of compensable consequences.

The overwhelming and undisputed evidence in this case can lead to no conclusion other than that the Claimant either knew or should have known the consequences of playing such a body contact sport as basketball. His complete disregard of the warnings and restrictions placed upon him constitute conduct sufficient to be an intervening cause of his aggravated condition for which he should not have been compensated by the Board.

The opinion of the Board must be reversed, and it is so ordered.