Gary S. GUILL, Appellant,

v.

**AETNA LIFE & CASUALTY COMPANY, Appellee.**

Supreme Court of Tennessee.

Nov. 7, 1983.

Richard S. Maxwell, Special Counsel, Joseph M. Dalton, Trial Counsel, Bart Durham, Nashville, for appellant.

William C. Moody, Nashville, for appellee.

OPINION

COOPER, Justice.

This is an appeal from the dismissal of a worker's compensation action. Appellant insists the trial judge erred in finding that appellant's disability was not the natural consequence of the treatment of a compensable injury to the low back, but was due to an intervening cause not connected with or arising out of the employee's employment.

There is no question but that appellant sustained a compensable injury to his low back in an on-the-job accident. The employer became obligated under the Workers' Compensation Act to furnish the employee medical treatment. T.C.A. § 50–6–204. Further, appellant became entitled to recover benefits for any disability resulting from his on-the-job accident or resulting directly and without intervening cause from medical treatment of the compensable injury. *McAlister v. Methodist Hospital of Memphis,* 550 S.W.2d 240 (Tenn.1977). *See also* 1 LARSON, WORKMEN'S COMPENSATION LAW, section 13.00 at 3–279, quoted with approval in *Wheeler v. Glens Falls Insurance Company,* 513 S.W.2d 179, 182 (Tenn.1974), as follows:

> When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.

In this case, appellant was initially treated by Dr. O.W. Ramsey, who was on the employer's list of approved physicians. Dr. Ramsey prescribed medications for pain, including injections of Phenergan and Nubain

which are administered intramuscularly. For a time, the injections were given by Dr. Ramsey in his office. Thereafter, appellant's wife gave the medicines, which were purchased on prescriptions written by Dr. Ramsey. Appellant continued to see Dr. Ramsey for therapy treatments, however.

When appellant did not respond to the medications or therapy, Dr. Ramsey referred him to Dr. Don Eyler, an orthopedic specialist. Dr. Eyler found that appellant was suffering from "a ligamentous sprain of the low back" and undertook to treat appellant conservatively, by prescribing drugs, therapy, and bed rest.

Appellant's condition did not show any marked improvement. Dr. Eyler then hospitalized appellant to ensure that appellant had complete bed rest and to run tests to determine if there were any disc pathology. According to Dr. Eyler, appellant "did very well in the hospital. Took a fair amount of medication, but had very few complaints about his back as long as he was in bed, and was a cooperative patient."

During this period of hospitalization, it was brought to Dr. Eyler's attention that appellant had been taking medications prescribed by Dr. Ramsey in addition to those prescribed by Dr. Eyler. Dr. Eyler instructed appellant to stop taking the injectable medications and prescribed medicine for pain to be taken orally. There is also evidence in the record that the Medical Cost Control Coordinator for Aetna orally instructed Mr. Guill that Aetna would no longer authorize or pay for injections prescribed by Dr. Ramsey, but would pay only for medications prescribed by Dr. Eyler.

Appellant was released from the hospital on November 8, 1981. On November 11, 1981, he was readmitted for further treatment and "to sort out this business about medication." Dr. Eyler concluded that appellant was not a drug addict. He described appellant as being "drug dependent," which he defined as a person "who takes drugs that are not addicting, but they just think they have to have two or three of them every day." Dr. Eyler again counselled appellant and appellant's wife to discontinue all injections of medications, ex-plaining that appellant's problem was not serious enough to require medicine stronger than that prescribed by Dr. Eyler for appellant.

Appellant was released from the hospital the second time on November 19, 1981, and was given the medications he was to take. On November 21, 1981, Mrs. Guill undertook to give appellant an injection of Nubain and Phenergan, which was not prescribed by Dr. Eyler. She had difficulty getting the medicine to remain in the muscles of appellant's buttocks, due to the number of previous injections and resulting cellulitis. Mrs. Guill then tried to inject the drugs into a vein in her husband's left arm. Evidently, the needle penetrated an artery which went into spasm, causing a condition described as a Volksman contracture. Gangrene resulted and appellant lost a part of his left arm by amputation.

Mrs. Guill testified to the difficulty she had in trying to give the injection in the buttock. She further testified that she gave the injection in the vein in the left arm only after consulting with Dr. Ramsey. Dr. Ramsey was not called as a witness by either party. Why he was not, is not clear in the record. The record does show, however, that at the time Mrs. Guill says she was consulting him for medical advice, Dr. Ramsey was no longer in the practice of medicine and this fact was known to Mrs. Guill and to her husband.

Dr. Eyler testified that Phenergan is a particularly hazardous medication if injected intravenously, and that while you might get away with giving Nubain intra-arterial, it is a definite hazard.

■ The trial judge concluded that the action of Mrs. Guill in giving the injection, in direct contravention to instructions from Dr. Eyler, was not a part of the medical treatment for appellant's on-the-job injury, for which appellee would be liable for the result, but was an independent intervening cause of injury. In our opinion, the finding of the trial judge is supported by material evidence.

■ Appellant has cited us to several cases where recovery of worker's compensation benefits have been allowed where dis-

ability resulted from the taking of drugs or the use of alcohol by the employee in an effort to get relief from the pain of a compensable injury. Appellant argues that this case is parallel to the cases cited, and that recovery of workers' compensation benefits should be allowed. We have no quarrel with the decisions cited, but find that they are of little help to us in this case. The key to the decisions cited was the finding by the trial judge that the disability from addiction or alcoholism was not the result of an intentional act, nor was it the result of an independent, intervening cause of injury. Here, the trial judge found to the contrary. The scope of our review of the trial judge's finding is limited to determining if there is any material evidence in the record to support his finding. We are not at liberty to weigh evidence or assess the credibility of witnesses, nor can we substitute our judgment for his, where there is material evidence to support his findings as there is in this case.

Judgment of dismissal is affirmed, it appearing that the appellee has paid all benefits due and expenses incurred in treating the compensable injury to appellant's back. Costs of the appeal are adjudged against appellant and his surety.

FONES, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.