Mary Suzanne SIMPSON, Plaintiff-Appellant,

v.

H.D. LEE COMPANY and Aetna Casualty and Surety Company, Defendants–Appellees.

Supreme Court of Tennessee, at Nashville.

July 23, 1990.

Raymond W. Fraley, Jr., Fayetteville, for plaintiff-appellant.

William S. Russell, Russell & Russell, Shelbyville, for defendants-appellees.

OPINION

DROWOTA, Chief Justice.

In this workers' compensation case the Plaintiff appeals the judgment of the Chancellor denying her benefits for the death of her husband. Plaintiff's husband strained his back in the course and scope of his employment and died three days later of an overdose of acetaminophen, one of the ingredients of two pain medications the doctor prescribed to relieve the back pain. Plaintiff argues on appeal that the evidence preponderates against the Chancellor's finding that her husband's death was not causally related to his employment. For the following reasons, we affirm the Chancellor's judgment.

On July 29, 1985, Plaintiff's husband, Dennis Simpson, hurt his back while working for the Defendant, H.D. Lee Company. It is uncontested that this injury occurred within the course and scope of Simpson's employment. The company nurse referred Simpson to Dr. Gilbert Aust, an orthopedic surgeon in Huntsville, Alabama. Dr. Aust examined Simpson that same day, diagnosed his injury as a mild lumbar sprain, and wrote out a prescription for 24 Tylenol # 3 pain tablets. On July 30, 1985, Simpson returned to Dr. Aust's office for therapy. At that time, he complained that the Tylenol # 3 made him sick, and Dr. Aust called in a prescription for 24 Lortab 7 pain tablets to replace the original Tylenol # 3 prescription.

After Simpson returned to his home in Fayetteville, he decided to visit a friend, Mike Ivey, who lived about 30 miles away. Simpson spent the evening visiting and drinking beer with friends at Ivey's house. During the evening Simpson called home and told his wife that he was going to spend the night at Ivey's. According to his friends at Ivey's house that night, Simpson went to sleep on the couch sometime between 11:30–12:30 p.m. When Mike Ivey got up to go to the bathroom around 5:00 a.m. he heard Simpson snoring. When Ivey got up later in the morning, however, he got no response when he tried to awaken Simpson. A prescription bottle with 7 Lortabs remaining was lying beside Simpson. Mike Ivey called an ambulance, which transported Simpson to Lincoln Regional Hospital, where resuscitation attempts were unsuccessful.

Dr. Harold Ferrell, a Maury County pathologist, conducted an autopsy. According to Dr. Ferrell, the cause of death was respiratory depression, which was possibly the result of a drug overdose. Plaintiff's expert witness, Dr. Josefino Aguilar, and Defendant's expert witness, Dr. Charles Harlan, both agree that Simpson died of an acetaminophen overdose, as Simpson's post-mortum acetaminophen level was 21 milligrams percent, and an acetaminophen level of 15 to 16 milligrams percent is lethal.

Plaintiff's theory was that Simpson's death from acetaminophen overdose resulted from taking prescribed medication according to directions. Because the medication was prescribed for Simpson's work-

related back injury, Plaintiff insisted that her husband's death was causally related to his employment. Both the Plaintiff and the Defendant filed motions for summary judgment, which the Chancellor denied. By agreement, the parties then submitted the case for decision without a hearing. After considering all the motions, depositions, pleadings, affidavits, medical records, and the entire record, the Chancellor found that the Plaintiff had failed to carry her burden of proof, and awarded judgment to Defendant.

■ The sole issue on appeal is whether the evidence preponderates against the Chancellor's finding that there was no causal connection between Simpson's death and his employment. Because Mr. Simpson's work-related injury occurred after July 1, 1985, our review is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e); *see also Alley v. Consolidation Coal Co.,* 699 S.W.2d 147 (Tenn.1985).

■ The burden of proving a causal link between an industrial injury and subsequent death is upon the petitioning widow. *Neas v. Snapp,* 221 Tenn. 325, 426 S.W.2d 498, 501 (1968). If the cause of death is a matter of speculation, there can be no award. *Cunningham v. Hembree,* 195 Tenn. 107, 257 S.W.2d 12, 14 (1953). This Court has also found that medication taken in direct contravention to instructions is an independent intervening cause of injury. *Guill v. Aetna Life and Cas. Co.,* 660 S.W.2d 42, 43 (Tenn.1983).

■ Plaintiff insists that the proof in the record supports her argument that her husband took his medication for his work-related injury according to the doctor's directions, and that such medication led to his death from an acetaminophen overdose. Plaintiff testified by deposition that her husband was not advised of the proper manner of taking the prescribed medicines and did not disobey instructions. She testi-fied that the directions on the pain medications read: "1 or 2 tablets every 4 hours *or* as needed for pain." Plaintiff's expert, Dr. Aguilar, testified that Dennis Simpson's ingestion of both Tylenol # 3 and Lortab 7 in accordance with the directions caused the lethal level of acetaminophen found in Simpson's system.

The weight of the evidence, however, supports the Chancellor's finding that Simpson was not taking the pain medication in accordance with directions; and hence, that Mr. Simpson's death was not causally related to his employment.

Dr. Aust, the doctor who treated Simpson for his back strain and prescribed the Tylenol # 3 and Lortab 7, testified by deposition that both the prescription for the 24 Tylenol 3 tablets and the 24 Lortab tablets were for "1 to 2 tablets every 4 hours *as* needed for pain." Dr. Aust testified that the second prescription (the Lortab 7 prescription) was prescribed as a replacement for the Tylenol # 3 because Simpson complained the Tylenol # 3 made him sick. Dr. Aust testified it was his office policy, when prescribing a replacement drug, to instruct the patient to discontinue the old drug. Furthermore, Dr. Aust testified that although his instructions to Simpson would have been not to take both pain medications, he believed that a patient could probably take both the Tylenol # 3 and the Lortab 7 without serious effect.

Dr. Harlan, Defendant's expert and the medical examiner for Metropolitan Nashville, testified that Simpson died of a massive dose of acetaminophen which must have come from an additional source above what had been prescribed. Dr. Harlan testified that even if Simpson had taken the 17 missing Lortab 7 and all of the Tylenol # 3 tablets, the acetaminophen contained therein still would not be enough to produce the acetaminophen level in Simpson's body. According to Dr. Harlan, then, within 1 to 5 hours before his death, Simpson, in addition to ingesting the bulk of the Lortab 7 and Tylenol # 3 tablets, must have ingested additional acetaminophen that was not pre-

scribed and which could have been from over-the-counter medication, which would have been the equivalent of the acetaminophen contained in an extra 17 Tylenol # 3 capsules, beyond the maximum that could be accounted for in the prescriptions given.

The weight of the evidence preponderates against a causal relationship between Mr. Simpson's death and his employment. The judgment of the Chancellor is accordingly affirmed. The costs of this appeal shall be taxed against the Plaintiff.

FONES, COOPER, O'BRIEN and DAUGHTREY, JJ., concur.