1996 SD 121

**Jeffrey Lee FENNER, Claimant and Appellant,**

v.

**TRIMAC TRANSPORTATION, INC., Employer and Appellee.**

and

**Cigna Property and Casualty Companies, Insurer and Appellee.**

**No. 19425.**

Supreme Court of South Dakota.

Considered on Briefs April 24, 1996.

On Reassignment July 8, 1996.

Decided Sept. 25, 1996.

---

Lawrence R. Bihlmeyer, Rapid City, for claimant and appellant.

Leah Jeffries of Lynn, Jackson, Shultz & Lebrun, Rapid City, for appellees.

GILBERTSON, Justice (on reassignment).

[¶ 1] Jeffrey Lee Fenner (Fenner) appeals from a denial of workers' compensation benefits. We affirm.

## FACTS & PROCEDURE

[¶ 2] Fenner was a member of the United States Army with a rank of E–4, having trained and worked in the field of heavy vehicle mechanics, when he injured his back while lifting a box from a shopping cart in December 1991. The medical treatment provided by the military did not restore Fenner's back. He was ultimately honorably discharged in March of 1992. At that time, he underwent a disability evaluation by the military. In June of 1992, his injury was found to be a service-connected disability for which he was awarded a 10% disability rating to his back and a 10% disability rating to his left index finger. In July 1994, having been reevaluated by the military, Fenner was informed his back condition had worsened and was awarded an additional 10% disability rating to his back.

[¶ 3] Despite his recent injury while in the Army, Fenner joined the National Guard in March of 1992, the same month as his discharge from the Army. One month later, Fenner obtained employment as a groundskeeper/maintenance worker but continued applying for alternative employment. He subsequently obtained employment as a heavy equipment mechanic for Heavy Constructors, Inc. before going to work for Trimac Transportation, Inc. in June 1992. Fenner obtained his job at Trimac after he had applied for disability benefits through the military but prior to his learning the outcome of that application. At Trimac, Fenner's duties included brake work, tarp work, and removing, repairing, and replacing tires that weighed up to 200 pounds. At his interview for this position, Fenner denied having any physical condition which would preclude his lifting up to 200 pounds. In July 1992, Fenner began receiving monthly disability payments from the Veteran's Administration for his service-connected "thoracic and lumbar spine condition."

[¶ 4] Fenner continued to receive physical therapy from the military for his back injury through July and August. On August 18, 1992, he was seen by a military physician for his continued back pain. Fenner had also been taking pain and anti-inflammatory medications for his back during this time period. However, he did not inform Trimac of his pain, his medications, his doctor's appointments or his physical therapy. On September 2, 1992, he was seen by a physician at the Veteran's Administration Hospital who ordered Fenner to change his occupation to "forestall future physical difficulties." Fenner started the necessary paperwork to change jobs, but without informing Trimac. He also continued working.

[¶ 5] On September 10, 1992, while lifting a truck tire, Fenner injured his back. He immediately reported the injury to his manager and completed a First Report of Injury. Fenner began treatment for his back injury with Dr. Massopust that day and did not return to work at Trimac. He was restricted by Dr. Massopust to no bending or lifting.

Fenner was informed by Trimac there was no work for him there that did not require lifting or bending. Fenner's doctor also restricted Fenner's physical activity at an upcoming National Guard Camp. Nevertheless, from September 16–30, 1992, Fenner reported for duty at National Guard camp where he performed duties he admits were beyond his physical limitations.

[¶ 6] Fenner applied for workers' compensation benefits which Trimac denied. Following a hearing, the Department of Labor denied Fenner's claim. The Department concluded Fenner's claim was barred pursuant to SDCL 62-4-46 because Fenner failed to inform Trimac about his pre-existing back condition and that Fenner's claim was barred due to a subsequent intervening cause. The Department's decision was appealed to the circuit court which reversed the Department on the issue of Fenner's alleged false representation of his physical condition and affirmed on the issue of subsequent intervening cause. Fenner appeals only the second portion of the circuit court's decision.[1]

## STANDARD OF REVIEW

[¶ 7] Our standard of review of workers' compensation appeals is well-settled. As we recently noted in *Helms v. Lynn's, Inc.*, 1996 SD 8, 542 N.W.2d 764:

Our standard of review from decisions of administrative agencies is governed by SDCL 1-26-37. This statute provides:

An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

However, when the issue is a question of law, the agency's actions are fully reviewable. Further, we review the findings

based on deposition testimony and documentary evidence de novo. The issue we must determine is whether the record contains substantial evidence to support the agency's determination.

*Id.* at ¶¶ 9–10, 542 N.W.2d at 766 (citations omitted).

## ANALYSIS AND DECISION

[¶ 8] The sole issue on appeal is whether Fenner's willful disregard of his physician's advice constitutes a subsequent intervening cause that bars his claim to workers' compensation benefits for his September 10, 1992 injury.

[¶ 9] SDCL 62-4-37 provides no compensation when an employee's actions constitute willful misconduct:

No compensation shall be allowed for any injury or death due to the employee's willful misconduct, including intentional self-inflicted injury, intoxication, illegal use of any schedule I or schedule II drug, or willful failure or refusal to use a safety appliance furnished by the employer, or to perform a duty required by the statute. The burden of proof under this section shall be on the defendant employer.

The term "willful misconduct" has long been defined in this state as "something more than ordinary negligence but less than deliberate or intentional conduct. Conduct is gross, willful, wanton, or reckless when a person acts or fails to act, with a conscious realization that injury is a *probable*, as distinguished from a *possible* (ordinary negligence), result of such conduct." *VerBouwens v. Hamm Wood Products*, 334 N.W.2d 874, 876 (S.D.1983) (citing *Granflaten v. Rohde*, 66 S.D. 335, 283 N.W. 153 (1938) (emphasis original)). Black's Law Dictionary defines the willful misconduct of an employee in this way: "Under workers' compensation acts, precluding compensation, [willful misconduct] means more than mere negligence, and contemplates the intentional doing of something with knowledge that it is likely to result in serious injuries, or with reckless disregard of

---

1. A notice of review of the first issue, Fenner's alleged false representation, filed by Trimac and its insurer, was deemed untimely by this Court. As such, our review is limited to the issue of subsequent intervening cause.

488

its probable consequences." Black's Law Dictionary, 6th ed. at 1600 (1990). SDCL 62–4–37 does not distinguish between work-related and non-work-related willful misconduct, and both types are contemplated by the statutory language. *Cf. In re Andren*, 917 P.2d 178 (Wyo.1996) (employee's work-related and non-work-related activities caused aggravation of compensable injury and precluded further benefits).

[¶ 10] In *Detling v. Tessier*, 60 S.D. 405, 244 N.W. 538 (1932*), aff'd. on reh'g*, 61 S.D. 403, 249 N.W. 686, this Court addressed the situation involving a workers' compensation claimant with a compensable back injury who failed to follow medical advice concerning the injury and who later attempted to obtain additional compensation for aggravation to that injury. We reversed the judgment of the circuit court granting additional compensation. The evidence showed the claimant had willfully disregarded his physician's advice by continuing to perform heavy manual labor, as well as engaging in such activities as dancing, fighting, and being jailed for public intoxication.[2] We stated that:

> [an i]njury aggravated or extended in time by the employee's neglect or disobedience of his physician's instructions is not compensable as to the additional period.... The proposition that one may continue, or even increase, his disability by his willful and unreasonable conduct, and then claim compensation from his employer for his disability so caused, is untenable.

*Id.* at 410, 244 N.W. at 541 (citing Honnold, *Workmen's Compensation*, vol.1, § 137, pp. 521, 523).

[¶ 11] Courts in other jurisdictions have also recognized the rule in *Detling*, albeit applying their own states' standards. *See Appleby v. Belden Corp.*, 22 Ark.App. 243, 738 S.W.2d 807 (1987) (holding that claimant's actions in heavy housecleaning and

house painting, in contravention of medical restrictions, was so unreasonable as to bar compensation for aggravation of her back injury); *Amoco Chemical Corp. v. Hill*, 318 A.2d 614, 618 (Del.Super. 1974); *Johnnie's Produce Co. v. Benedict & Jordan*, 120 So.2d 12, 13, (Fla. 1960) (holding that "[i]f a claimant, knowing of certain weaknesses, rashly undertakes activities likely to produce harmful results, the chain of causation is broken by the claimant's own negligence"); *Giacoletto v. Silver Bow Pizza Parlor*, 231 Mont. 191, 751 P.2d 1059, 1062 (1988) ("the degree of claimant's misconduct required to break the chain of causation must be 'intentional conduct which is clearly unreasonable' "); *Horne v. Universal Leaf Tobacco Processors*, 119 N.C.App. 682, 459 S.E.2d 797, 799 (1995); *Simpson v. H.D. Lee Co.*, 793 S.W.2d 929, 931 (Tenn. 1990) (finding medication prescribed for compensable injury but taken in direct contravention to physician's instructions was an independent intervening cause of injury precluding additional workers' compensation benefits for employee's subsequent death); *Leadbetter, Inc. v. Penkalski*, 21 Va. App. 427, 464 S.E.2d 554, 556 (1995); *Andren*, 917 P.2d at 180.

[¶ 12] In his discussion of intervening causes, Professor Larson has noted that:

> It is only when we come to cases involving the conduct of the claimant himself that the possibility of a break in the chain of compensable consequences is encountered.... [C]onduct of the employee related to the treatment of a compensable injury ... should not break the chain of causation *unless it amounted to an intentional violation of an express or implied prohibition.*

Larson, *supra* at § 13.21(d) (1996) (emphasis added). Here, the evidence reveals such a violation.[3]

**2.** Detling found himself in jail three times for public intoxication, including one time for twenty-five days wherein he slept on concrete floors.

**3.** Fenner cites to case authority that addresses compensation for preexisting conditions, a situation distinguishable from that in the present case. In *Harden v. South Dakota Credit Union League, Inc.*, 87 S.D. 433, 209 N.W.2d 665, 666 (1973), this Court held "[i]f a compensable event

contributed to the final disability, recovery may not be denied because of the preexisting condition, even though such condition was the immediate cause of the disability." In *Elmstrand v. G & G Rug & Furniture Co.*, 77 S.D. 152, 155, 87 N.W.2d 606, 608 (1958), we stated the applicable rule in preexisting condition cases is "we must take the employee as we find him." The facts of the present case, however, illustrate a situation described by Larson as the "original

[¶ 13] In the present case, following Fenner's December 1991 injury, the United States Army found him to be 10% disabled due to his "thoracic and lumbar spine condition." [4] On September 2, 1992, Fenner was seen by Dr. Lampert at the Veteran's Administration Hospital for Fenner's continued back pain due to his December 1991 injury. At the September 2 appointment, Dr. Lampert noted: "This veteran *must* undergo Voc Rehab with a change in jobs so that he can forestall future physical difficulties." (emphasis original).[5] Fenner claims he started the paperwork necessary to change jobs, but continued to work for Trimac. He did not inform Trimac of Dr. Lampert's order or that he had begun paperwork to comply with the order. Eight days later, Fenner injured his back while lifting a tire at work.

[¶ 14] Fenner asserts in his briefing to this Court that Dr. Lampert's order constituted a mere suggestion that he change jobs, and, as such, could not be disobeyed. This interpretation is contrary to the plain language of the unambiguous order itself. Furthermore, this interpretation is contrary to Fenner's own testimony at the Department of Labor hearing in which he stated: "[Dr. Lampert] made it very clear that I needed to change my occupation." Fenner cannot now claim, after offering this testimony, that his doctor's order was ambiguous or constituted a suggestion only. A party may not claim a better version of the facts than his prior testimony. *Parkhurst v. Burkel*, 1996 SD 19, ¶ 19, 544 N.W.2d 210, 214; *Parsons v. Dacy*, 502 N.W.2d 108, 111 (S.D.

1993). Fenner also demonstrates a clear understanding of his physician's instruction as he claimed to "start some paper work" to change jobs prior to the September 10 injury and in response to Dr. Lampert's order, albeit without notifying Trimac and while continuing to work.

[¶ 15] The record reflects Fenner intentionally and deliberately disregarded his physical limitations and his physician's order with respect to his back injury. We believe that a reasonable person, returning to work at Trimac under these circumstances, would realize that injury was not merely possible, but probable. Under the rule provided in SDCL 62-4-37 and as analyzed in *Detling*, Fenner's claim to workers' compensation for the injury which occurred eight days later must be denied and the circuit court's order affirmed. We do not look for reasons to reverse, even if we would not have made a similar decision, Peterson v. Beck, 537 N.W.2d 375, 379 (S.D. 1995), but confine our review to a determination whether the record contains substantial evidence to support the agency's decision. We find such substantial evidence in the present case.

[¶ 16] Our holding today in no way diminishes the disability award Fenner has been receiving for this injury from the United States Army since July 1992,[6] nor does it affect his application for vocational rehabilitation benefits through the military. It affects only a workers' compensation claim against Trimac for Fenner's aggravation of his original back injury.

compensable injury causing subsequent injury." On this subject, Larson notes that:

As to the primary injury, it has been shown that the 'arising' test is a unique one quite unrelated to common-law concepts of legal cause, and ... the employee's own contributory negligence is ordinarily not an intervening cause preventing initial compensability. *But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of 'direct and natural results,' and of claimant's own conduct as an intervening cause.*

Larson, *supra* at § 13.11 (emphasis added).

4. Fenner's continued claim that the present injury affects a different area of his back and is

unrelated to his December 1991 back injury is not supported by, and is in fact contrary to, his medical records. It is also contrary to Fenner's informing Dr. Massopust on September 10, 1992, after injuring his back at work that day, that he had "similar" back injuries in December which were treated in the military.

5. Dr. Lampert was so emphatic about the medical necessity of this directive that he underlined the word "must" twice in his handwritten notes of his September 2, 1992 examination of Fenner.

6. As noted previously in this opinion, in July 1994 the Army awarded Fenner an additional 10% disability rating to his back after finding his back condition had worsened.

[¶ 17] Our holding further does not negatively impact on any public policy described by the dissent as "encourag[ing] workers to seek and maintain gainful employment, even if they suffer disabilities." If the particular disability suffered prevents the worker from performing his job, and that worker has been informed by his doctor that he must change jobs to "forestall future physical difficulties," workers' compensation benefits will not be awarded for the subsequent injury caused by the worker's willful disregard for his physical limitations and his doctor's orders. This Court noted long ago that " '[a] recognized purpose of the Workmen's Compensation Law is to transfer from the worker to the employer, and ultimately to the public, a greater portion of the economic loss due to industrial accidents and injuries....' " *Therkildsen v. Fisher Beverage,* 1996 SD 39, ¶ 23 545 N.W.2d 834, 839 (quoting *Oviatt v. Oviatt Dairy, Inc.* 80 S.D. 83, 85, 119 N.W.2d 649, 650 (1963)). However, this purpose has its well recognized limits. It does not embrace a claimant's willful misconduct which is a bar to benefits provided by SDCL 62–4–37; *Therkildsen,* 1996 SD 39 at ¶ 10, 545 N.W.2d at 836; *Phillips v. John Morrell & Co.,* 484 N.W.2d 527, 532 (S.D. 1992). If Fenner's actions in this case are not held to constitute such misconduct, how many times should Fenner be permitted to draw from the public pocketbook, workers' compensation benefits for injuries suffered from repeated attempts to return to his job despite his medical restrictions?[7] The public should not be required to bear the economic loss due to Fenner's own willful actions in clear violation of his doctor's orders.

[¶ 18] We affirm.

[¶ 19] MILLER, C.J., and AMUNDSON, J., concur.

[¶ 20] SABERS and KONENKAMP, JJ., dissent.

KONENKAMP, Justice (dissenting).

[¶ 21] I am unable to support the result here or decipher the Court's logic in reaching it. If the majority is saying that when a doctor recommends vocational retraining for a change in employment, an employee must immediately quit work, I reject it as unsound. If the majority is saying that upon such advice, failure to quit one's job constitutes misconduct, I renounce it as repugnant to the beneficent principles of workers' compensation.

[¶ 22] Our workers' compensation laws were enacted to "provide an injured employee a remedy which is both expeditious and independent of proof of fault" and to "provide employers and co-employees a liability which is limited and determinate." *Harn v. Continental Lumber Co.,* 506 N.W.2d 91, 95 (S.D. 1993) (citations omitted). Negligence theory is discarded, and therefore, the affirmative defenses of assumption of the risk and contributory negligence are unavailable to employers. *Keil v. Nelson,* 355 N.W.2d 525, 530 (S.D. 1984). In South Dakota, benefits may be denied when an employee's injuries result from willful misconduct:

> No compensation shall be allowed for any injury or death due to the employee's willful misconduct, including intentional self-inflicted injury, intoxication, illegal use of any schedule I or schedule II drug, or willful failure or refusal to use a safety appliance furnished by the employer, or to perform a duty required by statute. The burden of proof under this section shall be on the defendant employer.

SDCL 62–4–37. "It is only in those instances that constitute serious, deliberate, and intentional misconduct, that the bar to benefits provided by SDCL 62–4–37 should be applied." *Phillips v. John Morrell & Co.,* 484 N.W.2d 527, 532 (S.D. 1992). Under this legislative blueprint, we construe workers' compensation laws expansively to allow coverage.[8]

---

7.  Two physicians, Drs. Massopust and Goff, concluded after Fenner's September 10, 1992 injury that he was unable return to his duties at Trimac. Under the dissent's theory of the case, however, Fenner could return to Trimac, suffer further injury, and expect to receive compensation for additional aggravation to his back condition.

8.  The majority cites a definition of "willful misconduct" from *VerBouwens v. Hamm Wood Products,* 334 N.W.2d 874 (S.D. 1983). That case did not involve employee misconduct under SDCL 62–4–37. The definition used in that case referred to an employer's knowledge of a danger-

[¶ 23] Fenner previously injured his back in December 1991, while in the United States Army. During military service, he trained and worked as a "heavy wheel vehicle mechanic." After completing active duty, he received an honorable discharge on March 2, 1992, and thereafter applied for disability benefits through the Veterans Administration. At approximately the same time, he submitted an employment application with Trimac. When he applied, Fenner did not tell Trimac of his disability request and his previous back injury, but he was not asked. After starting work he was awarded a 10% disability rating from the VA for his back. Yet nothing in his medical history at this point specified any restriction in the field for which he was qualified: truck maintenance.

[¶ 24] Fenner began employment with Trimac as a vehicle mechanic on June 15, 1992. His job responsibilities included heavy lifting. He sought medical attention at the VA Hospital for back pain on August 18 and September 2, 1992. In the latter visit, Dr. Lampert stated in Fenner's progress notes, "This veteran *must* undergo voc rehab with a change in job so that he can forestall future physical difficulties." (Emphasis in original.) Fenner, a married man with three children, continued working, but immediately began the application process to obtain vocational retraining through the VA. On September 10, 1992, while lifting a truck tire, he injured his lower back.[9] He then filed a workers' compensation claim.

[¶ 25] After a hearing, the Department of Labor denied benefits on two grounds.

First, pursuant to SDCL 62–4–46, it found Fenner falsely represented his physical condition to obtain employment. Second, it found Fenner's failure to inform his employer about his previous back injury and thereafter continuing to work for the employer constituted "negligence," barring an award of benefits. *See* 1 Arthur Larson, Workmen's Compensation § 13.11 (1991)(acknowledging that in some jurisdictions negligence may be an intervening cause). On appeal, the circuit court reversed the Department's interpretation of SDCL 62–4–46, ruling that Fenner had not "intentionally and willfully" falsified information on his employment application or in obtaining employment with Trimac.[10] Despite this holding, the court affirmed the denial based on Fenner's post-employment conduct. Inasmuch as the Department erroneously used the "negligence" standard, rather than remanding the matter, the circuit court re-labeled Fenner's actions as "intentional." It concluded as a matter of law that Fenner's "intentional disregard of his physical limitations and his physician's orders with respect to his injury bars his request for benefits." Fenner's appeal raises one issue: whether his post-employment conduct precludes an award of workers' compensation benefits.

[¶ 26] The majority relies upon *Detling v. Tessier*, 60 S.D. 405, 244 N.W. 538 (1932), to support its position that Fenner's disregard of his physician's advice, by not immediately changing jobs, constitutes willful misconduct, precluding benefits. In *Detling*, an employee sustained an injury while working. After

---

ous condition in the workplace. Therefore, characterizing the employee's actions under the *VerBouwens* definition as "something more than ordinary negligence but less than deliberate or intentional conduct" is a misapplication of the law. In South Dakota, to constitute willful misconduct an employee's actions must be, in fact, wholly intentional.

9. Both parties place much emphasis on whether the employment injury was separate and distinct, or merely an aggravation of the Army related injury. It appears they are arguing whether there was a causal connection between the Army injury and the alleged injury at Trimac. We need not consider these facts dispositive of the issue before us, but observe that they should be considered by the Department upon remand when making factual determinations regarding

the causal connection of the injury and its compensability. *See Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357–58 (S.D. 1992)(discussion of what employee must prove to establish causal connection and right to compensation).

10. The circuit court held that SDCL 62–4–46 requires an "intentional and willful" false representation and Fenner had not misrepresented his condition as he was merely asked his opinion about his physical abilities: "Do you have any injuries, you know, that would prevent you from doing this type of work." Fenner answered in the negative. Whether this ruling was correct must remain unexamined. Trimac's appeal on this issue was deemed untimely by this Court, and consequently, we are constrained to review only Fenner's post-employment conduct.

his injury, but before a final determination of disability, the employee threw himself into rollicking diversions plainly hazardous to his physical condition, all against medical advice. *Id.* at 409–10, 244 N.W. at 540. After he left the hospital without his doctor's consent and failed to wear a back brace as recommended, he went to dances; engaged in fights; got drunk and spent time in jail, for almost a month on one occasion, where he slept on a concrete floor. He also performed various makeshift jobs, such as delivering sacks of flour, pitching bundles in a harvest field, lifting and moving a furnace, hoeing a garden, and cranking a car. The employee was denied benefits due to his *"willful and unreasonable conduct"* in disregarding his physician's instructions, thus aggravating his own injury. *Id.* (emphasis added).

> The proposition that one may continue, or even increase, his disability by his willful and unreasonable conduct, and then claim compensation from his employer for his disability so caused, is untenable.

*Id.* at 410–11, 244 N.W. at 541 (citing Honnold on Workmen's Compensation, vol 1, § 137, pp. 521, 523).

[¶ 27] In addition to more egregious facts exhibiting willful misconduct, *Detling* is patently distinguishable.[11] First, most of the misconduct in *Detling* occurred while the employee engaged in nonwork related activities. Here, Fenner was working at the time of his injury, attempting to make a living for himself and his family. How can we brand this "willful and unreasonable" conduct? Surely public policy encourages workers to seek and maintain gainful employment, even if they suffer disabilities. Second, in *Detling*, the continuance or increase in disability arose after the employment injury occurred, but before a final determination of disability, thus muddling the degree of disability suffered from work as opposed to what was incurred from reckless dissipation.

[¶ 28] The Court also cites *Matter of Andren*, 917 P.2d 178 (Wy. 1996), to support its mistaken judgment. In *Andren*, the claimant returned to work even though his surgeon had not released him. In this instance, conversely, Fenner's doctor did not tell him he could not return to Trimac. Moreover, the facts in Andren go much further: he trimmed his surgical pins; treated his wound with honey despite his doctor's warnings against it; failed to take his antibiotics; failed to wear his splint at all times; eventually pulled the surgical pins out of his infected finger; and when infection caused severe pain, insisted the surgeon amputate. These facts correspond with those in *Detling*. Nothing Fenner did comes close to such behavior.

[¶ 29] In South Dakota, recovery may not be denied merely because an employee has a prior history of medical problems. *Harden v. South Dakota Credit Union League, Inc.*, 87 S.D. 433, 209 N.W.2d 665, 666 (1973); *Elmstrand v. G & G Rug & Furniture Company*, 77 S.D. 152, 155, 87 N.W.2d 606, 608 (1958). Insofar as a preexisting condition is concerned, employers must take their employees as they find them. *Harden*, 209 N.W.2d at 666; *Elmstrand*, 77 S.D. at 155, 87 N.W.2d at 608. "If a compensable event contributed to the final disability, recovery may not be denied because of the preexisting condition, even though such condition was the immediate cause of the disability." *Harden*, 209 N.W.2d at 666 (quoting *Elmstrand*, 77 S.D. at 155, 87 N.W.2d at 608). To offset this burden, the employers can suitably protect themselves from employees susceptible to injuries by carefully screening unfit applicants before employment. Employers have statutory protections if employees falsely represent their physical condition when obtaining employment. *See* SDCL 62–4–46. With this background in mind, let us more closely examine what the majority calls "willful misconduct."

---

**11.** Some of the cases the majority offers to support its argument are inapplicable, as well, because they rely on a lower standard than that required in South Dakota. *See*, e.g., *Appleby*, 22 Ark.App. 243, 738 S.W.2d 807 (considering whether an employee's actions aggravating a prior injury were merely reasonable); *Amoco Chemical Corp.*, 318 A.2d 614 (holding an employee's actions in disregarding his doctor's warnings were negligent); *Johnnie's Produce Co.*, 120 So.2d 12 (noting a claimant's actions for worker's compensation after aggravation of a preexisting injury would be barred if the intervening cause was the employee's negligence).

## Medical Advice

[¶ 30] The Court focuses on the progress notes Dr. Lampert entered approximately one week before the employment injury: "This veteran *must* undergo Voc Rehab with a change in job so that he can forestall future difficulties." Imperative or subjunctive, the intent and immediacy of this statement is unclear. Neither party obtained Dr. Lampert's testimony to clarify it. Even if it were an order, as the majority characterizes it, the statement is quite indefinite about a time frame for action and fails to delimit the type of employment to be avoided. Only one person was called upon to reflect on the significance of this statement—Fenner himself.

Q: Now, with Dr. Lampert, there in the V.A. at Fort Meade, did he order you to stop work at Trimac Transportation, Incorporated?

A: No.

Q: What, exactly, did he tell you, if you can remember the words or maybe the sense of the words?

A: He—He was trying to help me to get a—I think he—he—what he did was he evaluated what was going on with me, and he was trying to help me find a direction or a path to go, an alternate route.

Q: What did he say to you?

A: I don't recall, word for word, but he said, "As soon as you can, you should get into a different line of work."

Q: Did you understand a sense of urgency there? or was it not so urgent?—I mean, if you can characterize that.

A: It was moderate. I would say it was moderate. It would be a moderate type urgency.

Q: Did he indicate that you ought to do it next week?—or the following week?—or some definite time in the future?

A: No. No, he did not. In fact, I—believe I had already started paperwork to go to school.

Q: Do you think you told him that?

A: And he was just—Yeah, I'm sure that he was just trying to help the paperwork out for the V.A.

Q: So you think you told him that you were starting the paperwork for V.A. assistance for school?

A: Yes. Yes

Q: And he didn't tell you to quit the job, the next day. Is that right?

A: That's correct.

Although Fenner's decision to continue working in truck maintenance while seeking retraining for a new job may have been negligent, as the Department found, how can we can say his behavior was deliberate ·and intentional misconduct? "[M]ere negligence ... however great, does not constitute willful misconduct ... and will not defeat recovery of compensation by the employee or his dependents." *Barry v. Aetna Life & Casualty Company*, 133 Ga.App. 527, 211 S.E.2d 595, 596 (1974).

[¶ 31] Even if a claimant's actions amount to "disregard of medical recommendations" in returning to work, it is not "wilful misconduct." *Id.* at 599, 211 S.E.2d 595. *"To hold otherwise would penalize the claimant for attempting to continue working even though hurt to some extent." Aetna Cas. & Sur. Co. v. Cagle*, 106 Ga.App. 440, 126 S.E.2d 907, 908 (1962)(emphasis added). Nonetheless, Fenner did not disregard medical advice: no doctor told him he had to quit his present job. It was not until after his injury of September 10, 1992 at Trimac that he was told he could not return to work. Up until that time, Fenner was performing the very job for which he was most qualified to maintain himself and his family. *See Wyoming Workers' Comp. Div. v. Hollister*, 794 P.2d 886 (Wyo. 1990)(injured logger returned to logging, the only work he was qualified for, incurring another injury; holding it was not grounds for forfeiture of benefits); *Jones v. Director, OWCP, U.S. Dept. of Labor*, 977 F.2d 1106 (7th Cir. 1992)(claimant suffered work-related back injury in job involving heavy lifting, reinjured himself after returning to the same work after doctor suggested no heavy lifting over fifty pounds; holding, under the Longshore and Harbor Worker's Compensation Act, new injury was not supervening cause). "It would make little sense to administer this remedial statute intended for the benefit of ... employees in

a way that would unreasonably circumscribe their pursuit of employment." *Jones*, 977 F.2d at 1111. Employers carry the burden to show an employee's conduct was willful. SDCL 62–4–37; *Therkildsen v. Fisher Beverage*, 1996 SD 39 ¶ 10, 545 N.W.2d 834, 836. Trimac failed to carry its burden of proof.

### Attendance at National Guard Camp

[¶ 32] The Court refers to Fenner's attendance at National Guard Camp as a factor aggravating his injury. During this time, he painted fire hydrants, a shed, and operated a power washer. What the majority leaves unmentioned, however, is that Dr. Massopust, Fenner's physician at the time, advised him he could attend Guard Camp, but limited him to no heavy lifting or bending. In *Detling*, all the physicians who examined the employee agreed his willful disregard of medical instructions aggravated his injuries and if he had followed the advice, he probably would have partially, if not completely, recovered. *Detling*, 60 S.D. at 410, 244 N.W. at 540. Fenner left for Guard duty after consulting with his doctor and obtaining his approval. We review conclusions of law and mixed questions of fact and law under a de novo legal standard. *Schuck v. John Morrell & Co.*, 529 N.W.2d 894, 896 (S.D.1995). The majority's conclusion is wrong: Fenner's post-injury behavior falls far short of willful misconduct.

[¶ 33] Countless Americans show up for work every day with disabilities, ailments, aches and pains—we call this perseverance, not misconduct. I would reverse and remand to the Department for further proceedings consistent with this writing.

[¶ 34] SABERS, J., joins this dissent.